# United States District Court
## for the Northern District of Oklahoma

Case No. 25-cr-92-JDR

United States,

*Plaintiff*,

*versus*

John Gregory Garza,

*Defendant*.

## OPINION

Defendant John Gregory Garza has moved to review and revoke his detention pending trial. Dkt. 19. Mr. Garza argues that Magistrate Judge Young Kim's order does not describe the reasons for detention and that during the detention hearing Judge Kim afforded too much weight to the alleged inadequacy of Mr. Garza's aunt as a third-party custodian, concerns regarding his employment, and his risk of flight with no criminal history. *Id.*; Dkt. 23. He further argues that the Court can impose conditions on his release that will reasonably mitigate the risk posed by pretrial release. Dkt. 19 at 3-4. The Government opposes the motion, arguing that Mr. Garza is a danger to the community and that there are no conditions or combination of conditions that will reasonably assure the safety of any person or the community. Dkt. 20. The Court agrees with the Government and denies Mr. Garza's motion.

On March 18, 2025, a federal grand jury in the Northern District of Oklahoma returned a three-count indictment against Mr. Garza, including two counts of transmitting a communication containing a threat to injure a victim in violation of 18 U.S.C. § 875(c) and one count of using an electronic

service to engage in a course of conduct that placed a victim in reasonable fear of seriously bodily injury with the intent to harass and intimidate her in violation of 18 U.S.C. § 2261A(2). Dkt. 2. Mr. Garza was arrested in the Northern District of Illinois where he made his initial appearance on March 19, 2025. Dkt. 8 at 2. The Government orally moved for removal to the Northern District of Oklahoma and for detention. *Id.* At the detention hearing before Magistrate Judge Kim on March 21, 2025, both the Government and Mr. Garza proceeded by proffer. Magistrate Judge Kim granted the motions and ordered that Mr. Garza be removed in custody to the Northern District of Oklahoma. *Id.* at 11. Mr. Garza appeared on March 31, 2025, and Magistrate Judge Christine Little arraigned him and ordered he be detained pending further proceedings.[1] Mr. Garza's motion to revoke the detention order followed. Dkt. 19.

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge ... the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The court's review is de novo. *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019) (citing *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003)). "A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary[,] or it may rule on the written pleadings and evidence if the factual record is sufficient." *United States v. Daughtry*, No. 19-cr-0161-CVE, 2019 WL 4731949, at *2 (N.D. Okla. Sept. 27, 2019) (citing *United States v. King*, 849 F.2d 485, 490-91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985)).

To determine whether there was sufficient evidence to warrant Mr. Garza's detention, the Court scheduled the evidentiary hearing. At that hearing, held on June 12, 2025, the Government introduced the testimony of Special Agent Casey Cox, who provided details of his investigation into several

---

[1] The minutes from the hearing note "Defendant held detention hearing in District of Illinois and defendant detained." Dkt. 10.

No. 25-cr-92

social media accounts that sent threatening messages to the victims. The Government did not introduce any exhibits. Mr. Garza presented one witness: Ashlyn Lollman, an investigator with the Federal Public Defenders office, who provided details about her interviews with Mr. Garza's aunt, a former boss, and a friend that Mr. Garza has remained in touch with.

When considering whether there are any conditions or combination of conditions that will reasonably assure the safety of another person or the community, the Court must look at the factors set forth in 18 U.S.C. § 3142(g). The first factor requires the Court to consider the nature and circumstances of the offense charged. *Id.* at § 3142(g)(1). Mr. Garza is charged with the serious offense of threatening, harassing, and intimidating individuals over the internet. The Government alleges that his posts and messages demonstrated "a pattern of misogynistic, antisemitic, and racist beliefs consistent with incel[2] ideology, particularly focused on a hatred of white women in romantic relationships with non-white men." Dkt. 20 at 9. It appears from the record that Mr. Garza has gone out of his way to interact with and target certain individuals and has been blocked by numerous accounts because of this contact. The Government also alleges that Mr. Garza's online posts indicate a desire to commit an act of mass violence. *Id.* at 11-14. This factor weighs in favor of detention.

The second factor, "the weight of the evidence against the person," 18 U.S.C. § 3142(g)(2), weighs in favor of detention. Agent Cox was able to tie numerous accounts to Mr. Garza based on the use of his personal phone number when creating the accounts, images of Mr. Garza being posted or sent

---

[2] "The 'incel' movement—short for 'involuntary celibate'—refers to a loosely organized, predominantly online community of heterosexual men who subscribe to male supremacist beliefs and frequently believe that they have been unfairly denied sexual or romantic attention from women. A central tenant within the incel community is the dehumanization of women, which often translates into the glorification of violence against women and, in extreme cases, actual violent attacks against women." Dkt. 20 at 8-9.

3

No. 25-cr-92

social media accounts that sent threatening messages to the victims. The Government did not introduce any exhibits. Mr. Garza presented one witness: Ashlyn Lollman, an investigator with the Federal Public Defenders office, who provided details about her interviews with Mr. Garza's aunt, a former boss, and a friend that Mr. Garza has remained in touch with.

When considering whether there are any conditions or combination of conditions that will reasonably assure the safety of another person or the community, the Court must look at the factors set forth in 18 U.S.C. § 3142(g). The first factor requires the Court to consider the nature and circumstances of the offense charged. *Id.* at § 3142(g)(1). Mr. Garza is charged with the serious offense of threatening, harassing, and intimidating individuals over the internet. The Government alleges that his posts and messages demonstrated "a pattern of misogynistic, antisemitic, and racist beliefs consistent with incel[2] ideology, particularly focused on a hatred of white women in romantic relationships with non-white men." Dkt. 20 at 9. It appears from the record that Mr. Garza has gone out of his way to interact with and target certain individuals and has been blocked by numerous accounts because of this contact. The Government also alleges that Mr. Garza's online posts indicate a desire to commit an act of mass violence. *Id.* at 11-14. This factor weighs in favor of detention.

The second factor, "the weight of the evidence against the person," 18 U.S.C. § 3142(g)(2), weighs in favor of detention. Agent Cox was able to tie numerous accounts to Mr. Garza based on the use of his personal phone number when creating the accounts, images of Mr. Garza being posted or sent

---

[2] "The 'incel' movement—short for 'involuntary celibate'—refers to a loosely organized, predominantly online community of heterosexual men who subscribe to male supremacist beliefs and frequently believe that they have been unfairly denied sexual or romantic attention from women. A central tenant within the incel community is the dehumanization of women, which often translates into the glorification of violence against women and, in extreme cases, actual violent attacks against women." Dkt. 20 at 8-9.

3

from the accounts, and conversations with Mr. Garza's former coworkers confirming his radical views as expressed on the accounts.

Mr. Garza's history and characteristics, the third factor under Section 3142(g), are not dispositive for or against detention, but they weigh in favor of Mr. Garza. Mr. Garza appears to have some family support because his aunt attended the hearing before the magistrate judge in the Northern District of Illinois, but she did not attend the evidentiary hearing before the undersigned. If released, Mr. Garza could reside with his 73-year-old aunt, who is retired and has no criminal history. Likewise, Mr. Garza has no prior criminal history. But Defense counsel noted that Mr. Garza has an alcohol addiction and would, if released, receive in-patient treatment for 30 days before being permitted to return home.

The fourth factor requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release …." *Id.* at § 3142(g)(4). Mr. Garza did not limit his threats to the victims of the charged offenses but also made posts describing his interest in mass shootings, individuals who have committed mass shooting, and suicidal ideations. Although there is no way to predict mass shootings, Agent Cox identified several stressors Mr. Garza has exhibited that the FBI views as potential indicators of a mass shooting perpetrator: alcohol abuse, the recent death of relatives (here, Mr. Garza's parents), job problems, mental health, and sexual stress or frustration. The FBI has also identified several behaviors associated with individuals who have committed mass shooting that Mr. Garza exhibits: poor sleep habits, "leaking" their desire to commit an act of mass casualty, sexual frustration, threatening violence, alcohol abuse, and exposure to violent media. This factor weighs in favor of detention.

Having considered the four statutory factors, the Court finds and concludes that there are no conditions or combination of conditions that will reasonably assure the safety of any other person or the community. Mr. Garza's

No. 25-cr-92

motion to revoke the order detaining him and set conditions of release [Dkt. 19] is denied. Mr. Garza shall be detained pending trial pursuant to the order previously imposed by the magistrate judge.

DATED this 12th day of June 2025.

JOHN D. RUSSELL
*United States District Judge*